

STEVEN H. FELDERSTEIN (State Bar No. 056978)
PAUL J. PASCUZZI (State Bar No. 148810)
JENNIFER E. NIEMANN (State Bar No. 142151)
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone:  (916) 329-7400
Facsimile:  (916) 329-7435
sfelderstein@ffwplaw.com
ppascuzzi@ffwplaw.com
jniemann@ffwplaw.com



FILED
JAN 10 2017
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

Attorneys for The Roman Catholic Bishop of Stockton

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC<br>BISHOP OF STOCKTON, a<br>corporation sole,<br>              Debtor-In-Possession. | CASE NO. 14-20371<br><br>Chapter 11<br><br>Date:          January 10, 2017<br>Time:         2:30 p.m.<br>Courtroom:  35<br>                    501 I Street, 6th Floor<br>                    Sacramento, CA |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
DEBTOR'S PLAN OF REORGANIZATION DATED OCTOBER 26, 2016**

A hearing was held before this Court on January 10, 2017 (the "Confirmation Hearing"), to consider confirmation of the Debtor's Plan of Reorganization Dated October 26, 2016 (the "Plan") [Docket No. 757] proposed by the Roman Catholic Bishop of Stockton (the "Debtor"). The Court has examined the record compiled in this Reorganization Case, and has considered, among other things:  (i) the Plan; (ii) the Disclosure Statement to Accompany the Debtor's Plan of Reorganization Dated October 26, 2016 and all schedules and exhibits thereto [Docket Nos. 760 and 761]; (iii) the Plan Documents; (iv) the Debtor's Memorandum in Support of Confirmation of Debtor's Plan of Reorganization Dated October 26, 2016 [Docket No. 801] ("Memorandum"); (v) the Committee's Memorandum in Support of Classification of Tort Claims filed under seal [Docket No. 802]; (vi) the Declaration of Karen L. Widder Regarding Tabulation of Ballots in Support of Confirmation of Debtor's Plan of Reorganization Dated October 26, 2016 [Docket No. 804] ("Voting Declaration"); (vii) the certificates of service of the solicitation

package, ballot and release [Docket Nos. 768 through 772 and 776]; (viii) the Proof of Publication of the Notice of Plan Confirmation Hearing and Objection Deadlines [Docket No. 813] and (ix) the offers of proof, declarations in support of confirmation of the Plan [Docket No. 806, 807, 815 /], evidence admitted and the arguments and representations of counsel at the Confirmation Hearing. Based upon the foregoing and it appearing that no party has filed an objection to confirmation of the Plan, and after due deliberation and sufficient cause appearing therefor:

A. <u>Findings of Fact and Conclusions of Law</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing[1] constitute this Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such pursuant to Bankruptcy Rule 7052.

B. <u>Jurisdiction and Venue</u>.

1. This Court has jurisdiction over this Reorganization Case and confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O) and this Court has jurisdiction to enter a final Order with respect thereto. The Debtor is eligible to be a debtor under Section 109 of the Bankruptcy Code. The Debtor is a proper Plan proponent under Section 1121(a) of the Bankruptcy Code. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Insurance Policies are property of the Estate and therefore are subject to the exclusive core jurisdiction of this Court. The sale of the Released Insurance Policies to fund the Plan in this case is within the Court's core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(N). The Court has jurisdiction over the Tort Claim Interests in the Released Insurance Policies (including the Channeled Claims against the Diocese Parties) because the Released Insurance Policies are being sold. 11 U.S.C. §§ 363(e) and (f), 1123(a)(5)(D) and 1123(b)(4) and (5); 28 U.S.C. § 157(b)(2)(L), (N) and (O).

---

[1] Unless defined otherwise herein, terms used in these findings of fact and conclusions of law shall have the same meanings and definitions set forth in the Plan.

  C. <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Debtor's Reorganization Case and related proceedings maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of this Reorganization Case.

  D. <u>Solicitation and Notice</u>.  On October 31, 2016, the Court entered an Order (A) Approving the Disclosure Statement in Support of Plan of Reorganization; (B) Establishing Procedures for Solicitation and Tabulation of Votes; (C) Approving the Form of Ballots and the Inclusion of Releases and Certifications Therein; (D) Approving the Form and Manner of Notice of the Insurance Settlement Agreement and the Participating Party Agreement; and (E) Setting the Confirmation Hearing [Docket No. 764] (the "Solicitation Procedures Order").  The Solicitation Procedures Order, among other things, approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan.  Pursuant to the Solicitation Procedures Order, the Court required the Debtor to distribute Solicitation Packages (as defined in the Solicitation Procedures Order) to:  (i) the U.S. Trustee; (ii) those Entities who have formally filed requests for notice in this Reorganization Case pursuant to Bankruptcy Rule 2002; (iii) all Persons or Entities that filed proofs of Claim on or before the date of the Confirmation Hearing Notice at the address set forth on their Proofs of Claim and to their counsel of record, if any, except to the extent that a Claim was withdrawn or paid pursuant to or expunged by prior order of the Bankruptcy Court; (iv) all Persons or Entities listed in the Debtor's schedules of assets and liabilities or any amendments thereof (the "Schedules"), as holding liquidated, non-contingent, and undisputed Claims in an amount greater than zero; (v) all parties to Executory Contracts listed in the Schedules; (vi) the California Attorney General; (vii) the United States Attorney for the Eastern District of California; (viii) the Internal Revenue Service; (ix) the Securities and Exchange Commission; (x) any Entity that has filed a notice of transfer of claim under Bankruptcy Rule 3001(e) prior to the date of the Confirmation Hearing Notice; (xi) any other known holders of Claims against the Debtor;

(xii) anyone against whom the Debtor might hold a Claim; (xiii) all parties on the master mailing list; (xiv) state and local taxing authorities; (xv) Medicare, Medicaid, the Centers for Medicare & Medicaid Services and the U.S. Department of Health and Human Services; and (xvi) all Persons and Entities known to the Debtor to have provided general or professional liability insurance to the Debtor or Diocese Parties; with the exception that the Debtor is excused from mailing to Entities from which the Solicitation Packages were returned as undeliverable by the United States Postal Service, unless the Debtor is provided with accurate addresses for such Entities on or before a date which is fifteen (15) days from the date of service. The Solicitation Packages consisted of: (i) the Solicitation Procedures Order; (ii) Confirmation Hearing Notice; (iii) the approved form of the Disclosure Statement (together with the Plan annexed thereto as Exhibit 1, which will be filed with the Court following approval and upon the mailing); (iv) the Ballot with a return envelope or the Notice of Non-Voting Status; (v) Notice of Settlement Agreements; (vi) a letter from the Debtor in support of the Plan; and (vii) a letter from the Committee in support of the Plan. Notice in accordance with the Solicitation Procedures Order, including notice by publication as provided therein, satisfies the requirements of the Bankruptcy Code and Bankruptcy Rule 2002 and was fair and appropriate under the circumstances of this Reorganization Case.

The Debtor and its professionals followed the procedures set forth in the Solicitation Procedures Order for soliciting acceptances of the Plan, as evidenced by the Voting Declaration and the Certificates of Service for the Solicitation Packages filed of record with the Court [Docket Nos. 768 through 772 and 776]. The Debtor did not solicit acceptances or rejection of the Plan from any Claim Holder before the transmission of the Disclosure Statement.

The Debtor published notice of the Confirmation Hearing, the Insurance Settlement Agreement and the Participating Party Agreement in the applicable publications in accordance with the Solicitation Procedures Order (the "Publication Notice") and the deviation in publishing the Publication Notice in the *Linden Herald* described in the Memorandum was not material and did not affect the reasonableness, adequacy and sufficiency of the Publication Notice.

Therefore, the Debtor has complied with Section 1125 of the Bankruptcy Code.

E.  <u>Voting</u>. The Solicitation Procedures Order fixed December 6, 2016 as the Voting Deadline. The Debtor has tabulated the Ballots accepting or rejecting the Plan in the Voting Declaration. As set forth in the Voting Declaration, the Debtor has satisfied the ballot tabulation procedures set forth in the Solicitation Procedures Order and properly tabulated the Ballots received in connection with the Plan.

As set forth in the Voting Declaration, the Plan has been accepted or rejected, by each of the Classes as follows:

| Class | Description | Impairment | Voting |
|---|---|---|---|
| Class 1 | Priority Employee Unsecured Claims | Unimpaired | Deemed to Accept |
| Class 2 | Prepetition Date Secured Tax Claims | Impaired | Accepted |
| Class 3 | Pastoral Center Lender Secured Claims | Impaired | Accepted |
| Class 4 | Non-Priority Employee Claims | Unimpaired | Deemed to Accept |
| Class 5 | General Unsecured Convenience Claims | Unimpaired | Deemed to Accept |
| Class 6 | General Unsecured Claims | Impaired | Accepted |
| Class 7 | Claim of F & M Bank | Impaired | Accepted |
| Class 8 | Claim of RCW | Impaired | Accepted |
| Class 9 | Priest Retirement Claims | Impaired | Accepted |
| Class 10 | Extern Priest Claims | Unimpaired | Deemed to Accept |
| Class 11 | Other Tort Claims | Impaired | Accepted |
| Class 12 | Tort Claims A | Impaired | Accepted |
| Class 13 | Tort Claims B | Impaired | Accepted |
| Class 14 | Tort Claim C | Impaired | Accepted |
| Class 15 | Unknown Tort Claims | Impaired | Accepted |

F.  <u>Burden of Proof</u>. The Debtor has met its burden of proving the elements of Section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

G.  <u>Plan Compliance – Section 1129(a)(1)</u>. The Plan complies with all applicable provisions of the Bankruptcy Code. The Plan designates fifteen (15) separate Classes of Claims. The Plan adequately and properly classifies all Claims required to be classified and thus satisfies the requirements of Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Under the Plan,

eleven (11) Classes of Claims are impaired and four (4) Classes of Claims are not impaired.

H.  Pursuant to the Order on Debtor's Motion to Determine Classification of Claims Pursuant to 11 U.S.C. § 1122 and Bankruptcy Rule 3013 [Docket. No. 765], the Court has approved, and hereby reaffirms such approval, the classification requirements for Classes 12, 13, 14 and 15 in the Plan pursuant to Sections 1122 and 1129(b)(1). Further, based on the evidence and argument submitted at and prior to the Confirmation Hearing, the Court approves the classification of specific Tort Claims as set forth in the Plan definitions of Tort Claims A, Tort Claims B, Tort Claims C, and Unknown Tort Claims.

I.  No election for application of Section 1111(b)(2) of the Bankruptcy Code by any Class of secured creditors was made under Bankruptcy Rule 3014.

J.  Section 1123(a)(8) does not apply because the Debtor is not an individual. The Plan contains other provisions for implementation that are reasonable and consistent with Sections 1123(a)(7) and 1123(b) of the Bankruptcy Code.

K.  <u>Proponent Compliance – Section 1129(a)(2)</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The Debtor solicited acceptances of the Plan in accordance with the requirements of the Solicitation Procedures Order, the Bankruptcy Code, and the Bankruptcy Rules. The Ballots of holders of Claims entitled to vote on the Plan were properly solicited and tabulated, as described in the Voting Declaration. The Debtor has further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by the Court in this Reorganization Case. The record in this Reorganization Case further discloses that the Debtor has attempted in good faith to comply with the Orders of the Court entered during the pendency of the Reorganization Case and that the Debtor has not violated any such Orders.

L.  <u>Good Faith – Section 1129(a)(3)</u>. The Plan has been proposed in good faith by the Debtor and not by any means forbidden by law. No person has filed a valid objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law. Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may

determine compliance with Section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues. The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation Hearing. The Plan has been accepted by all of the impaired classes of impaired Claims entitled to vote by margins far in excess of those required by the Bankruptcy Code. Such acceptance evidences the informed judgment of Creditors that the Plan is in their best interests. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and to effectuate a distribution of such value to Creditors. The Plan is the result of extensive good faith, arm's-length negotiations among the Debtor, the Committee, the attorneys for a substantial number of the Tort Claimants, the Settling Insurers, and the Participating Parties, among others, and is the result of a Court-ordered mediation. In addition, the Plan's exculpation, release and injunctive provisions have been negotiated in good faith and are consistent with Sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code. The Plan achieves a result consistent with the objectives and purposes of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code.

M. <u>Plan Payments – Section 1129(a)(4)</u>. All amounts to be paid by the Debtor or its Estate for services or expenses in this Reorganization Case have either been fully disclosed and approved as reasonable or, pursuant to the terms of the Plan, will be disclosed and subject to the approval of the Bankruptcy Court following confirmation of the Plan. All expenses that the Trust incurs after the Effective Date (including the fees and expenses of professionals retained by the Trust after the Effective Date) may be paid by the Trustee from the Trust Assets pursuant to the terms of the Plan and the Trust Agreement. Payment of pre-Effective Date Professional Fee Claims shall be governed by the terms of the Plan and shall be paid only upon application to the Bankruptcy Court.

N. <u>Appointment of Trustee of Tort Claims Trust – Section 1129(a)(5)</u>. The Plan provides for the appointment of Omni Management Acquisition Corp. ("Omni"), or any validly selected successor, as the Trustee of the Trust, to be retained as of the Effective Date, to oversee and administer the Trust pursuant to the terms of the Plan. Based on the Declaration of Eric

Schwartz In Support of Findings of Fact And Conclusions of Law Regarding Debtor's Plan of Reorganization Dated October 26, 2106 [Docket No. 815], it appears that Omni does not hold or represent an interest adverse to the Trust and that the appointment of Omni as the Trustee is consistent with the interests of Creditors and with public policy. The Reorganized Debtor will continue to be managed as a corporation sole. The individuals identified in the declarations in support of confirmation of the Plan have been involved in management of the Debtor's affairs for many years. Accordingly, the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

O.    Rates – Section 1129(a)(6). There are no rates applicable to the Debtor over which any governmental regulatory commission will have jurisdiction after confirmation of the Plan.

P.    Best Interests – Section 1129(a)(7). As set forth in the Disclosure Statement, each Holder of an Allowed Claim will receive under the Plan property of a value not less than the amount such Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. A conversion of this Reorganization Case to Chapter 7 would likely be accompanied by a decrease in the amount of recovery that Creditors would receive on account of their Claims as a result of (a) the failure to implement certain settlements and (b) the commissions and additional administrative fees and expenses that would be incurred during a Chapter 7 case. Thus the Plan provides a superior recovery to Creditors than conversion of this Reorganization Case. No election for application of Section 1111(b)(2) of the Bankruptcy Code by any Class of Secured Creditors was made under Bankruptcy Rule 3014. The Plan thus is in the best interests of Creditors under Section 1129(a)(7) of the Bankruptcy Code.

Q.    Acceptance – Sections 1129(a)(8). All holders of Claims impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan. The Plan has been accepted by the holders of Claims in Classes 3, 6, 7, 8, 9, 12, 13, 14 and 15. While no holder of a Claim in Classes 2 and 11 voted on the Plan, such Classes are deemed to have accepted the Plan pursuant to the Solicitation Procedures Order. Accordingly, the Debtor has satisfied the requirements of Section 1129(a)(8) of the Bankruptcy Code requiring "acceptance" by all impaired classes.

R.   <u>Administrative Expenses/Priority Claims – Section 1129(a)(9)</u>. The Plan provides that each Holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on the Effective Date (or, if later, the applicable Claim Payment Date); or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court; provided, however, that (i) any Administrative Claim incurred postpetition by the Debtor in the ordinary course of its operations or arising pursuant to one or more postpetition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other; and (ii) any Administrative Claim related to Abuse occurring after the Petition Date through the Confirmation Date will be paid on the Claim Payment Date after settlement or entry of a Final Order in the appropriate non-bankruptcy forum and, without in any way limiting the payment obligation of the preceding clause, may be paid from Insurance Policies issued by Non-Settling Insurers covering such Claims.

With respect to Professional Fee Claims, the Plan provides that Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve an application for final allowance of compensation and reimbursement of expenses pursuant to the Plan, and such Professional Fee Claims will be paid upon allowance by the Court.

The Plan provides that with respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall pay such Claim pursuant to the provisions of Section 1129(a)(9)(C) of the Bankruptcy Code: (a) in deferred Cash payments over a period of five (5) years from the date of assessment, to be paid in equal quarterly installments of principal and interest; (b) the first payment to be made on the first Business Day after the day which is sixty (60) days after the later of the Effective Date or the Claim Payment Date; and each

payment thereafter to be made on the first Business Day of each succeeding quarter until paid in full; provided, however, that the entire unpaid amount of the Allowed Priority Tax Claim, together with any interest accrued thereon, will be paid in full on the date which is five (5) years after the date of assessment of such Allowed Priority Tax Claim; or (c) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.

S.   Impaired Class Acceptances – Section 1129(a)(10).   Eleven (11) Classes of Claims are impaired under the Plan, and, as reflected in the Voting Declaration, the Plan has been accepted by at least one impaired Class without including the vote of any insider.

T.   Feasibility – Section 1129(a)(11).   The Plan complies with Section 1129(a)(11) of the Bankruptcy Code because under the Plan, the Trust or the Reorganized Debtor will convert the Debtor's assets to cash and distribute such cash pursuant to the terms of the Plan.  Pursuant and subject to the Plan, among other things:

1.   By the next Business Day after all the conditions to Effective Date set forth in Sections 29.2(a)-(f) of the Plan have occurred, the Debtor will pay to the Trust by wire transfer the sum of $14,250,000.00.

2.   In accordance with the Insurance Settlement Agreement, the Settling Insurers will make wire transfers to the Plan Implementation Account as follows:

   a.   Beazley Group:  One Million Two Hundred Thousand Dollars ($1,200,000.00);

   b.   The Ordinary:  Nine Hundred Seventy Five Thousand Dollars ($975,000.00);

   c.   St. Paul Travelers Insurance:  Three Hundred Seventy Five Thousand Dollars ($375,000.00);

   d.   Great American Insurance Companies:  Three Hundred Twenty Five Thousand Dollars ($325,000.00);

   e.   Pacific Indemnity: Two Hundred Thousand Dollars ($200,000.00);

   f.   North Star/General Star Management Co.: One Hundred Thousand Dollars ($100,000.00);

   g.   ACE USA: Fifty Thousand Dollars ($50,000.00);

   h.   Fireman's Fund Insurance Company:  Fifty Thousand Dollars ($50,000.00); and

   i.   Security/Arrowood Indemnity:   Thirty Thousand Dollars

($30,000.00).

3. On or before the Effective Date, the Participating Parties will transfer $2,905,000.00 to the Plan Implementation Account.

4. On or before the Effective Date, All Saints University Church will transfer $1,295,000.00 to the Plan Implementation Account.

5. On or before the Effective Date, the RCW will transfer $1,000,000.00 to the Plan Implementation Account.

6. On or before the Effective Date, the Debtor will transfer $7,400,000.00 or so much as is necessary to satisfy the Debtor's initial obligations under the Plan to the Plan Implementation Account.

7. The Cemetery Loan will fund approximately $1,000,000.00 to the Debtor or Reorganized Debtor.

8. The Reorganized Debtor's projected operating revenues will provide the Reorganized Debtor with sufficient assets to meet its obligations under the Plan and to pay the expenses it will incur in the ordinary course of business.

Based on the foregoing and the terms of the Plan, confirmation is not likely to be followed by the need for further financial reorganization of the Debtor or the Trust.

U. <u>Fees Payable Under 28 U.S.C. § 1930 – Section 1129(a)(12).</u> Section 34.11 of the Plan provides for the payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), until the entry of a final decree or an order converting or dismissing this Reorganization Case.

V. <u>Retiree Benefits – Section 1129(a)(13).</u> The provisions of Section 1129(a)(13) of the Bankruptcy Code, to the extent applicable to the Debtor, have been complied with.

W. <u>No Domestic Support Obligations – Section 1129(a)(14).</u> The Debtor is not required by a judicial or administrative order, or by statute, to pay domestic support obligations. Accordingly, Section 1129(a)(14) of the Bankruptcy Code is inapplicable to this Reorganization Case.

X. <u>Distribution in Case of Individual Debtor – Section 1129(a)(15).</u> The Debtor is

not an individual, and accordingly, Section 1129(a)(15) of the Bankruptcy Code is inapplicable to this Reorganization Case.

Y. <u>No Applicable Nonbankruptcy Law Regarding Transfers – Section 1129(a)(16)</u>. All transfers of property under the Plan are being made in accordance with any applicable provisions of nonbankruptcy law that governs the transfer of property by a corporation that is not a moneyed, business or commercial corporation or trust.

Z. <u>Only One Plan – Section 1129(c)</u>. The Plan is the only plan filed in this Reorganization Case, and accordingly, Section 1129(c) of the Bankruptcy Code is inapplicable to this Reorganization Case.

AA. <u>Principal Purpose of the Plan – Section 1129(d)</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of Section 1129(d) of the Bankruptcy Code.

BB. <u>Good Faith Solicitation – Section 1125(e)</u>. Based on the record before the Court in this Reorganization Case, (i) the Debtor is deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, Sections 1125(c) and (e) of the Bankruptcy Code, and any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtor, the Debtor's Professionals, the Committee and each of its members, the Committee's Professionals, the Future Claims Representative, and all of their respective present or former members, managers, officers, directors, employees, Representatives, attorneys, and agents acting in such capacity shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and Section 30.3 ("Exculpation and Limitation of Liability") of the Plan.

CC. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

DD. <u>Financing</u>. The financing to be obtained under the Plan is necessary in order for

the Debtor to fund the amount of the Debtor's contribution to the Plan and comply with its obligations under the Plan, is in the best interests of creditors and the Estate, and is essential to the implementation of the Plan. The terms of the financing were negotiated in good faith and at arm's length, and are within the Debtor's reasonable business judgment.

EE. <u>Sale of the Released Insurance Policies</u>. The sale of property of the Estate under the Plan and the Insurance Settlement Agreement was negotiated in good faith and at arm's length. The consideration to be paid for each sale of property is fair and reasonable and is the result of extended negotiations pursuant to the Court-ordered mediation and otherwise. The sale proceeds to be received pursuant to the Insurance Settlement Agreement are necessary components of the Plan and essential to funding the Plan. The Settling Insurers are good faith purchasers for value within the meaning of Section 363(m) of the Bankruptcy Code and are entitled to the protection thereof, and neither the Insurance Settlement Agreement nor the transactions contemplated thereby are subject to avoidance under Section 363(n) of the Bankruptcy Code. None of the Debtor, the other releasing Diocese Parties, or the Settling Insurers have engaged in any conduct that would cause or permit the Insurance Settlement Agreement or the sale of the Released Insurance Policies free and clear of all Tort Claim Interests, to be avoided under Section 363(n) of the Bankruptcy Code or that would prevent the application of Section 363(m) or cause the application of Section 363(n). Furthermore, in the absence of a stay pending appeal, if any, the Settling Insurers will be acting in good faith within the meaning of Section 363(m) in consummating the contemplated transactions at any time after entry of the Confirmation Order.

FF. <u>Satisfaction of Section 363 and Other Bankruptcy Code Requirements</u>. The transactions contemplated by the Plan and the Insurer Settlement Agreement are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including, without limitation, Section 363. The Debtor may sell the Released Insurance Policies free and clear of all Tort Claim Interests under Section 363(f) because, in each case, one or more of the criteria set forth in Sections 363(f)(1)-(5) have been satisfied. Those holders of Tort Claim Interests against any of the Released Insurance Policies who vote in favor of the Plan, sign releases, did not object, or

who withdrew their objections to the Plan or the relief requested therein are deemed to have consented pursuant to Section 363(f)(2). Each holder of a Tort Claim Interest in the Released Insurance Policies can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Tort Claim Interest as contemplated by Section 363(f)(5). The claims and Tort Claim Interests held by Entities whose Tort Claim Interests are represented by the Future Claims Representative are "claims" within the meaning of Section 101(5) of the Bankruptcy Code. The sale of the Released Insurance Policies provides claimants, including, without limitation Tort Claimants, with adequate protection. In particular, the Tort Claimants will receive compensation for their Claims from the Trust being created pursuant to the Plan contemplated by the Insurance Settlement Agreement. Accordingly, the sale of the Released Insurance Policies free and clear of all Tort Claim Interests satisfies the statutory prerequisites of Section 363(f). Moreover, a Non-Settling Insurer, if any, may assert Claims for contribution, indemnity, subrogation, or similar relief against the Trust through reduction of any judgment of the Trust against such Non-Settling Insurer as and to the extent set forth more fully in the Insurance Settlement Agreement and the Plan.

GG. <u>Business Judgment</u>. The Debtor has exercised appropriate business judgment in resolution of Claims against the Settling Insurers and the Participating Parties as evidenced by the Insurance Settlement Agreement and the Participating Party Agreement, the proceeds of which are necessary and essential components of the Plan and are the result of extensive negotiation as part of the Court-ordered mediation. The settlement and compromise with the Settling Insurers embodied in the Insurance Settlement Agreement, including, without limitation, the sale of the Released Insurance Policies free and clear of all Tort Claim Interests and the release of claims as set forth therein is within the reasonable range of litigation outcomes if the Debtor and other releasing Diocese Parties were to litigate the matters resolved pursuant to the Insurance Settlement Agreement and the Confirmation Order and represent fair and reasonable consideration for the sale of the Released Insurance Policies free and clear of all Tort Claim Interests and release of claims as set forth therein. The settlement and compromise with the Participating Parties embodied in the Participating Party Agreement is within the reasonable

range of litigation outcomes if the Debtor and other releasing Diocese Parties were to litigate the matters resolved pursuant to the Participating Party Agreement and the Confirmation Order and represent fair and reasonable consideration for the release of claims as set forth therein. The transactions contemplated by the Insurance Settlement Agreement, the Participating Party Agreement, and the Plan are in compliance with, and satisfy the requirements for, approval of a settlement or compromise pursuant to Bankruptcy Rule 9019 and all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a) and 363 of the Bankruptcy Code, and applicable non-bankruptcy laws. It is, therefore, in the interests of the Estate, the creditors and other parties in interest to approve the Insurance Settlement Agreement and the Participating Party Agreement without incurring the delay, asset depletion and risk that litigation would cause to the Estate, its creditors and other parties in interest.

HH. <u>Releases and Injunctions</u>. The litigation commenced by Tort Claimants that predated the Reorganization Case was the primary cause in the Debtor's filing of the Reorganization Case. Because it would be impractical to divide the Insurance Policies, it was necessary for the Debtor to obtain the other Diocese Parties' participation in the Insurance Settlement Agreement.

1. The releases and Injunctions provided pursuant to Article 30 of the Plan are critical components of the Plan and the settlements embodied therein and each of the Protected Parties thereunder has made a substantial contribution to the Plan and the Estate.

2. The payments by the Settling Insurers under the Insurance Settlement Agreement and the payment by the Participating Parties under the Participating Party Agreement are critical and significant contributions to the success of the Plan, and the Plan would not be feasible without such contributions.

3. Resolution of this Reorganization Case would not have been possible without such releases and Injunctions, and the Protected Parties, including the Diocese Parties and the Settling Insurers, would not have made any contribution to the Plan without obtaining such releases and Injunctions.

4. The Diocese Parties would not release their interests under the Released

Insurance Policies unless they obtained the benefits of the Injunctions under the Plan, because to do so may have left them exposed to Channeled Claims, whether or not such Claims are valid and whether or not coverage exists under the Settling Insurers' Insurance Policies for such Claims.

5. The Settling Insurers' payments under the Insurance Settlement Agreement and the Participating Parties' payments under the Participating Party Agreement provide good and valuable consideration to the Trust, and enable Unsecured Creditors such as the holders of Tort Claims and Channeled Claims to realize increased distributions on their Claims. The Insurance Settlement Agreement and the Participating Party Agreement are necessary to the Plan because they provide significant funds for the Plan. Therefore, the releases and Injunctions in the Plan are essential components of the Plan.

6. The Creditors, including the Tort Claimants, have overwhelmingly voted in favor of the Plan and requested Ballot releases were received from all Tort Claimants in Classes 12 and 14 and eighteen of the nineteen voting Tort Claimants in Class 13.

7. The Plan provides a mechanism for the distribution to the classes affected by the Injunctions and enables the Holders of Tort Claims against the Debtor to realize increased distributions on their Tort Claims.

For all of the foregoing reasons, this Reorganization Case presents unique circumstances where the Injunctions in the Plan and the release of non-debtors, including the Diocese Parties and the Settling Insurers, from Channeled Claims and the imposition of the Injunctions are proper and appropriate.

II. Other than purchases of the Released Insurance Polices pursuant to the Insurance Settlement Agreement, the Settling Insurers did not purchase any other assets of the Debtor and the Settling Insurers are not a continuation of the Debtor or engaging in a continuation of the Debtor's business.

JJ. There is no common identity of officers or directors existing between the Insurer Parties on the one hand, and the Diocese and other releasing Diocese Parties on the other hand. None of the Settling Insurers are, and shall not be deemed to be, a successor to the Debtor by

reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Insurance Settlement Agreement, the Plan, or otherwise. The Settling Insurers have not assumed, nor are they deemed to have assumed, any liabilities or other obligations of the Debtor.

Dated: January 10, 2017

_____
UNITED STATES BANKRUPTCY JUDGE